Next we'll hear from Bowles v. United States May it please the court, Edward Himmelfarb with the Department of Justice representing the United States. Mr. Willie here represents Rosie O'Connell. This appeal involves a dispute over whether certain allegedly defamatory statements made by Rosie O'Connell, a Vermont postmaster, were made within the scope of her employment. The district court upheld some of the scope certification as to some of the statements and overturned it as to others. With respect to the statements that it upheld that are not on appeal, the court applied the correct guiding principle and I'm quoting, because Ms. O'Connell was following USPS policy and reporting the assault, her statements were made in the scope of her employment even if the statements were allegedly false and even if compliance with an established USPS policy was not Ms. O'Connell's primary motive for making them. That's page 286 of the Joint Appendix. But the reason we're here today is the district court did not apply this guiding principle to certain other statements and from the United States point of view, those statements are the April statement to the substitute postmaster and the October statement, statements to postal supervisors and the police. The testimony of the record shows that those statements also were consistent with post office policy and they should have been held to be within the scope of the district court. In deciding what post office policy was, the written policies is very brief. Report directly to the local post inspector all cases of assault. Mr. Reen testified variously about what that means in terms of to whom it gets reported and in what circumstances, you know, retrospective and other aspects of it. Is Mr. Reen the reliable source of interpretation for all purposes of US Postal Service policy? Yes, however, the main point is that there is a policy of encouraging employees to report crimes and there's a good reason for that. The Postal Service has an obligation to ensure the safety of the workplace and of its post offices where customers come in and so it needs... But in specific then, with regard to an incident that occurred off Postal Service property and with regard to a former postal worker, is that covered by the policy? Did Mr. Reen... Well, Mr. Reen specifically said that if the employee who allegedly conducted the former, is a former employee who allegedly made the assault, that is within the policy. That's correct. That's in the testimony. Whether there's a specific policy about off-site incidents is a different story, but think about this obvious example. A bunch of people in the Postal Service get off their shift and go out to a bar to have drinks and they get into a fight with each other. Postal Service needs to know about that even though it's off-site because those people are going to be working with each other and there's a potential for on-site... So would you say there's a policy requiring alleged assaults by co-workers to be reported not only to supervisors but also to all other co-workers who might come in contact with the individual? Well, Your Honor, we're not appealing here the denial of the scope certification as to the co-workers with one exception, and that's to the Postmaster Relief, the substitute postmaster, because she was right there. She's taking over for Rosie O'Connell and Rosie O'Connell was assaulted in April and left and wasn't available to work. That's the job of the So that's what we're appealing. We don't object, by the way, to the ones that Mr. Willey is raising here for Rosie O'Connell, but those are not, for the United States, those are not the important ones. We want to focus on what we consider the most important statements here. I'm just trying to figure out how to best to interpret what the postal policy is, in fact. Right, well, the policy is to have... Well, you mentioned the Administrative Support Manual. It's very brief, but that's the policy, and the policy is to have it brought to the notice of the Postal Service so the Postal Service can look into it and decide what to do. That's the important agency reason for having this happen, having the policy and having the employees report crimes. So your claims pertain to the report with respect to the Postmaster Relief as to the April 2012 incident, and then to police officers and supervisors on the October 2012 incident. That's correct. That's what our appeal is limited to. The other challenges are Ms. O'Connell. That's correct, Your Honor. And so I think all of those were within the policy. They were all designed to further the Postal Service's interest in protecting the safety of its workplaces and its post offices where customers come in. So those, in our view, were pretty clearly within the scope of employment, and that part should be reversed. The case is going to go on against Ms. O'Connell no matter what happens here to some extent, and the question is to what extent and which statements were within the scope and which were not within the scope. All right. Thank you very much. Thank you. May it please the Court, I'm John Willie on behalf of Rosie O'Connell. One of the other issues we have appealed is statements that Ms. O'Connell made to a newspaper reporter after both assaults had occurred. It was after the second support manual postmasters as Rosie O'Connell are designated to be the local spokesperson for media relations concerning matters of local concern. Right, but since she was the victim, as I understand the record, she was specifically advised by her Postal Service superiors not to speak to the media. There's nothing in the record that she was advised that because she was the victim. She was advised not to comment and refer any media inquiries to Tom Rizzo in media communications. However, how do you invoke that she's the spokesman? She's just been told by superiors that she will not be the spokesman. Well, the person that advised her not to speak was in media relations, was not her supervisor. She was not directed not to comment and Maureen Marion, who testified, said that all we can do is advise. She's also in field communications. All we can do is advise somebody. This is at 230-235, but we cannot demand somebody not do something. She would have a right as a citizen to speak, but then she's subject to libel laws. She's, I mean, you can't say that in terms of her postal responsibilities they can't tell her to speak or not to speak, and I'm suggesting to you that effectively they told her not to speak on behalf of the post office. Well, I'm not sure that's the correct interpretation. The reason that came about was that there was a first newspaper article published about the April incident, which caused Rosie to be concerned, and she called media relations to get some advice on how to the newspaper reporter about both incidents was six months later, but there is no evidence that she was deprived of her obligation, her duty under the Administrative Support Manual to respond to media inquiries about matters of local concern, which this obviously was. I'd like to ask just briefly about the co-workers. Was there evidence in the record that she believed other employees were at risk? Her state of mind, I guess, is not specifically in the record, but yes, she was contacted by other postmasters and postmasters relief who would have contact with Mr. Bowles, and for their safety, as Mr. Ring testified, it would be appropriate for her to tell all their postmasters and for a long time. Was there anything else to suggest that it was more generic? Nothing in the evidence before the Court, Your Honor. Thank you. Good morning, Your Honors. May it please the Court, I'm David Bond. I represent Brian Bowles. It's our position that there is no jurisdiction over this interlocutory appeal because it fails to meet the criteria to satisfy the beneficial loan corporation. Three criteria must conclusively decide a contested issue. Second, it's important and separate from the merits, and three, that the district court's disposition must be effectively unreviewable later in the litigation. How do you deal with the Supreme Court's holding in Osborne v. Haley where the Court instructs that on certification review, the scope of were made on duty at a time and place. The truth or falsity of the statements is not then at issue. Your Honor, if you look at note 15 in Haley, there is a passage in there which suggests that it may be, I think I'm paraphrasing here, it may be possible to resolve scope certifications without an inquiry into the merits, is more or less what the Court says. Indeed, it goes on to say in the body of it that were it otherwise, a federal employee could be stripped of suit immunity, not by what the Court finds, but what the complaint alleges, and that that's not the point of the certification inquiry. Well, we're dealing with a unique, very unique set of facts here, Your Honor. It's in the large body of cases that you're, it's only the rare exception you're going to find the circumstances here. The evidence is actually overwhelming that Rosie O'Connell concocted this story of assault in order to get rid of a troublesome co-worker. Right. And you don't normally have such clear separation between the issue of scope of employment versus the the merits of the case, but that exists here in very unusual circumstance. So what we have is a statement that if, she made statements to postal inspectors that if they were found to be false by court would potentially put her at risk of being in violation of federal law with up to five years of jail time. The Postal Service also has an anti-hoax policy, which I can just read it to you, states any employee who creates or promotes any report they know to be false will be subject to appropriate corrective action up to and including termination from employment. So we concede that if the... If a postal employer was told by their supervisor, have a report on my desk Monday morning dealing with subject acts, and the employee files the report, and it's riddled with deliberate falsehoods, there's no doubt that the report is being produced in the course of her employment. She may be subject to the thousand and one violation, I don't know, but you know, I'm just not sure you want to pursue this. Do you want to discuss what would happen if we do find jurisdiction here? What kind of an argument you would make to us for affirming? Sure, Your Honor. First, the statements to co-workers, putting aside the issue of the Ms. O'Connell has argued that those statements were necessary because there was basically an act of emergency, that they needed to be notified, that there was a dangerous person, that they had to be aware of this supposed assault that had occurred, and it was her responsibility because she exercised supervisory responsibilities, but a postmaster's supervisory responsibility is limited solely to the post office that they supervise, and these statements to Carlene Hewitt, who's the postmaster of relief for the South Pomfret post office, Jean Jennings, the postmaster of relief for North Pomfret, or Karen Lundquist, who's the officer in charge for North Pomfret, they were not under Rosie O'Connell's supervision. She was the postmaster at the Hartford post office, and bringing them all into the picture, including her own postmaster of relief, it's not as if there was an act of emergency that Rosie needed to address. She was found by a postal customer lying on the floor, groaning and saying that she'd been attacked, and so they called the police. The police arrived. Postal supervisors were notified. Ms. O'Connell was taken to the emergency room and spent several hours there while her supervisors had the matter in hand. To the extent that they needed to find somebody who was going to then fill in for Rosie O'Connell, because that's one of their responsibilities, and her fill-in person, the designated fill, this is the job description of postmaster of relief, Carolyn Wittick, was actually called by them and came that day to do those duties. So they'd already taken care of this. Why was it inappropriate for her to speak to the relief postmaster? Because she was in the hospital for hours. We're talking about the next day, probably. We don't have that testimony in the record. She wanted to brief her replacement on what had happened. It was in connection with the personnel who had been at that particular post office. Well, she might have wanted to do that, but that was something that her supervisors had control of the situation at that point. And so it wasn't necessary, and it wasn't actually... Was the argument that it wouldn't have been inappropriate for her supervisors to have told the postmaster relief that the reason Ms. O'Donnell was out was because she alleged that your client had assaulted her? Under these set of factual circumstances, yes, Your Honor, given the long length of time that it elapsed. They would have been allowed to say it, but she's not. That's right. Why? Well, it assumes that there's some sort of active emergency, right? No, it doesn't assume that. It assumes that there's been an incident involving two postal officers. But you're acknowledging that it would have been permissible for her supervisor to tell the postmaster relief. That's different from, you know, telling it among other employees who might not have had need to know, but you're acknowledging that it was appropriate for the postmaster relief to be told. So I don't know how it was not part of Ms. O'Donnell's employment to brief her replacement. On a matter that you agree the replacement should have been made aware of. And I just have to come back to the issue of the truth or falsity of the statements, because the sort of statements that were being made, Ms. O'Donnell clearly could only know that the statements were false versus her supervisors who had to take those statements on face value. That was their responsibility. So truth or falsity matters. Do you understand that the truth or falsity of the statement is a contested issue at this point? Absolutely, Your Honor. Okay. But when the — Ms. O'Donnell's story is that Brian Bowles hit her on the head three or four times with a handheld postal scanner, which is a large metal and plastic object that weighs about five pounds. If he had actually done that, he would have inflicted significant injury on her. I understand why you defend the — against the statement, but the statement is contested, and I've suggested to you that trying the merits of it is not what certification is about. I believe that there — Osborne v. Haley does provide room for that under footnote 15. I'm sorry. Osborne v. Haley is the Supreme Court decision that basically says, yes, this satisfies the collateral order doctrine. But they were dealing with a different set of facts, and under their set of facts, it did. And they weren't trying to imagine our set of facts, but they did leave room in footnote 15, I believe, for that possibility. There's another case from the — it's from the Maine District Court in 1999, Bergeron v. Henderson. We've cited it on page 44 of our brief, and it says, in some cases, the resolution of immunity-related facts will necessarily result in the resolution of facts that go to the heart of the merits of a plaintiff's claims. In some cases, a district court is in the position where, to determine the validity of the Westfall certificate, it must resolve issues of fact regarding intent that hold the potential to have ultimately dispositive effects on the merits of the plaintiff's claim in the same proceeding. Under the restatement formulation that applies in Vermont, in order to determine whether something is within the scope of employment, you have to look to state law. Vermont employs Section 228 of the Restatement of Agency, and that provides a list of factors that are considered in the conjunctive, including, one, to use the restatement's somewhat antiquated language, whether the servant's actions were actuated, at least in part, by a purpose to serve the master. That is, ultimately, the question of whether the actions were actuated by a purpose to serve the master involves a subjective inquiry into what was the employee's intent. Did this person know that this was a completely false report? If it was a false report, it didn't serve the Postal Service's purposes in any way. If the master, the United States Postal Service, is before the court with the Attorney General having certified, that creates a presumption. So you've got the burden now to show that it wouldn't be, right? Right. We were denied even discovery into truth or falsity. The discovery was strictly limited to scope of employment. But it is a relevant issue here. And so we would respectfully submit that the case should just, the court should find that it has no jurisdiction or amend the case for a decision on the merits, a hearing on the merits. Thank you. Ms. Sotomayor, I think you have a minute rebuttal. If the Court has questions, I'd be happy to try to answer them now. If not, I think we'll waive rebuttal. I think we understand the parties' positions, and I thank all of you for your arguments. We'll take the case under advisement. Thank you.